Steven Scott Hudson, a Minor, by Ronald C. Hudson, His Father and Next Friend, Plaintiffs-Appellants, v. Augustine's, Inc., a Corporation, and Thomas O'Donnell, Administrator of the Estate of Jewell Eldridge, Deceased, Defendants-Appellees.

Gen. No. 64–114.

Fifth District.

June 21, 1966.

John E. Norton, Harold Jennings, and Sprague and Bock, all of Belleville, for appellants.

Jack E. Horsley and Whitney D. Hardy, of Craig & Craig, of Mattoon, for appellees.

EBERSPACHER, J.

This is a personal injury case arising out of an accident which occurred in a construction area in back of Augustine's, a restaurant located in Belleville, on October 12, 1961.

Augustine's restaurant is a family owned corporation and Mary Hudson is a sister to the three Augustine brothers who were the stockholders and officers of the corporation. On the day in question, Paul Augustine brought his mother, Martha, his sister Mary Hudson, and Steven, the minor plaintiff, to the restaurant. Mary was going to take Steven, who was four and one-half years old, to the barbershop but Paul asked her to help serve a special party. Mary agreed, entered the kitchen and placed Steven in front of a box near the pizza oven in the kitchen. She gave him a pencil and some drawing paper to occupy his time. She asked her mother, Martha Augustine, to watch the plaintiff and Mary took her place on the food assembly line. Within a very few minutes, Steven disappeared. It later developed that the plaintiff had left the kitchen and gone into a construction area behind the building where materials were being assembled incident to a remodeling project. Jewell Eldridge, a deaf-mute, was an employee of the corporation. He worked as a general handyman and his duties included driving a certain panel truck owned by the corporation. At the time of the occurrence, there was lumber in the truck stacked to a depth of twelve or thirteen inches and projecting three or four feet behind the truck. Both doors at the rear of the truck were open to accommodate the projection of the lumber. Eldridge had driven the panel truck, with the load of lumber, to the rear of the restaurant near the remodeling project. Eldridge backed the truck up to within three feet of the restaurant door preparatory to unloading the lumber. He got out, went back to remove the lumber from the truck and saw Steven crying and with his clothing torn. He

immediately picked up the minor plaintiff and carried him in to the kitchen. Other than Eldridge and the plaintiff, there were no eyewitnesses to the accident or the occurrences immediately preceding it.

On April 20, 1962, Davis, an investigator for plaintiff's attorney, through Dale Schwahn acting as an interpreter, asked Eldridge a series of questions concerning the accident in which plaintiff was involved on October 12, 1961. Dale Schwahn had also been an employee of Augustine's, who had been working with Eldridge at Augustine's for approximately six years. Present also at the time these questions were propounded was a Notary Public, James Keehner, and Jesse L. Hart, a court reporter. First, Schwahn was sworn by the Notary to truly and correctly interpret Eldridge's statements; the Notary then had Schwahn relate in sign language an oath that Eldridge would tell the truth, the whole truth and nothing but the truth to which Schwahn replied, "He says he does." Next, in the statement appears a series of questions by Davis directed to and answered by Schwahn, to the effect that he, Schwahn, was not an interpreter for the deaf and dumb, but only for Eldridge who had taught Schwahn "everything, the signs and that," that Schwahn had been communicating with Eldridge "quite easily" for the 6 years they had been employed together, that Eldridge had taught Schwahn "the basics, the spelling," and that Schwahn had "not really" had any trouble in communicating with friends of Eldridge's wife in "this sign language used." (The record does not show that either Eldridge's wife or her friends were deaf or dumb). In answer to Davis' question, "Are you the only person who communicates with Mr. Eldridge with this language?" Schwahn answered, "Ralph Augustine can to a certain extent" and in answer to Davis' question, "They depend on you primarily for communication?" Schwahn answered, "Well no. See I don't know, you can make motions for somethings to do, you know," and

229

in answer to Davis' question, "As far as getting a specific idea across, rather than pointing or something, with the sign language you use, do they depend on you primarily?" Schwahn answered, "Yes, for certain things, yes."

Davis then proceeded to question Eldridge through Schwahn, who stated with reference to the occurrence that Eldridge had seen the plaintiff at Augustine's on previous occasions with his mother and had at the direction of Tony Augustine gotten the lumber and that he drove into Augustine's lot, saw the plaintiff when he started to back up to a door through which he was going to take the lumber; that he was about 20 feet from the door and that at that time the plaintiff was playing on the ground about 10 feet to the right of the truck, facing the truck, and that the plaintiff looked at the truck and started playing on the ground, that he did not sound his horn, that he backed up at a speed no greater than 5 or 10 miles per hour, and while backing used both the rearview mirror and the open door to look and also that he turned his head to the right to look out the back of the doors; he did not know the plaintiff had been struck until he had stopped the truck about 3 feet from the door and found plaintiff lying on the ground at the left-hand side of the truck when he had gotten out of the truck and gone to the back of it to unload. Eldridge also answered that he had driven this panel truck many times and on other occasions had delivered to this particular door, that normally there were no children about this area, and that although he had seen this plaintiff with larger boys in the area of this back door, he had never seen plaintiff in this area by himself, prior to this accident. Eldridge presented his driver's license, from which Davis read that it had a code restriction of corrective eye lenses and outside rearview mirror.

The transcript of the questions and answers made by the court reporter also included statements directed

by Davis to Schwahn, and shows that a considerable amount of difficulty was encountered in the questioning and interpreting with numerous instances of Schwahn himself giving the answers. In one instance, according to the transcript, Eldridge answered that he had seen the plaintiff playing in the area of the accident an hour before he started backing up; whereas the evidence indicates that the plaintiff had not, on this particular day, been on the premises an hour before that time, and was taken by his mother directly into the kitchen upon arrival. In answer to Davis question, "From the time he first saw the boy until the time he realized he had hit the boy, approximately how much time had elapsed?" Schwahn answered, "He says ten minutes. See, sometimes certain things you can explain to him you would explain to a normal person—there is lots of things he don't understand. I don't know how to exactly explain it."

Eldridge died on May 10, 1962, and on May 17, 1962, a complaint was filed against Augustine's, Inc., and on February 25, 1963, a supplemental complaint was filed against Thomas O'Donnell, as Administrator of the Estate of Jewell Eldridge, deceased.

The transcript of the questions, answers, statements and conversations, made by the court reporter, was identified as Plaintiff's Exhibit 2 by Davis, Schwahn and Hart, the court reporter, each of whom testified that it was a true and accurate copy of everything that was said. Plaintiff offered his Exhibit 2 into evidence and it was objected to on behalf of both defendants, Augustine's, Inc., and the Administrator of Eldridge's estate. Plaintiff's counsel stated that he would like to have it read in open court, if there was a favorable ruling "so these items could be ruled on in open Court, as if Mr. Eldridge were here to testify through an interpreter."

■ ■ The trial court advised that any admissions against interest contained therein would be admissible,

but that the statement could not be read to the jury the same as if Eldridge were testifying. The court took the attitude that such statement could not be read to the jury because defendants would then be denied the right of cross-examination. In the taking of evidence depositions, cross-examination is provided for; but a decedent's statements against interest are not objectionable because of the lack of opportunity to cross-examine, because the lack of opportunity to cross-examine is deprived of significance by the incongruity of the party's objecting to his own statement on the ground that he was not subject to cross-examination by himself at the time. Wigmore on Evidence, 3rd ed 1940, § 1048, Cleary, E. W. Handbook of Illinois Evidence (2d ed 1963), p 280, § 17.11.

The court sustained the objection as to both defendants. Plaintiff then offered his Exhibit 2A, which was a modified version of Exhibit 2, in which there had been deleted certain questions and answers and statements as prepared by defense counsel. Objections made on behalf of both defendants were sustained as to Plaintiff's Exhibit 2A.

Plaintiff then made offers of proof of the testimony of Davis and Schwahn to the effect that Eldridge made the statements contained in Plaintiff's Exhibit 2A, as against either or both of defendants. The remainder of the proceedings were before the jury.

The admission of certain photographic evidence was then stipulated to and plaintiff called two of the three Augustine brothers as to physical facts and Mary Hudson, plaintiff's mother, who testified as to the occurrences of that day leading up to her and plaintiff being at Augustine's, her work there after placing plaintiff near the pizza oven, under the surveillance of her mother, Martha Augustine, that she did not see plaintiff leave the kitchen and her discovery of plaintiff's injury when

Eldridge carried plaintiff into the kitchen. Martha Augustine testified that she had undertaken to watch plaintiff, that she did not know how much time had elapsed, and that she discovered plaintiff was not in the kitchen only when Eldridge was carrying him through the dishwashing room into the kitchen.

Plaintiff, who was at the time of the trial approximately 7 years old, was then called on his own behalf. Objection to his testimony as against Eldridge's estate was made as being incompetent under section 2 of the Evidence Act, and the objection was sustained. He testified, that he recalled the day of the accident, was standing in front of the truck when he saw it, that the truck was coming toward him, that he never heard a horn and that Eldridge got out of the truck after it hit him; that he screamed before he got hurt but Eldridge did not stop and ran over him; that he was somewhere over to the left of the door. In answer to the question, "What was the first thing that hit you, if you know?" plaintiff answered, "It was the back end. No, I think it was the front part." The next question was, "You don't know though?" to which plaintiff answered, "No, I just think the front fender."

Medical bills, the nature, extent and permanence of plaintiff's injuries were stipulated.

Plaintiff than called Paul Augustine who testified concerning getting his sister Mary Hudson and plaintiff, that plaintiff was to be with Martha Augustine in a part of the kitchen; he further testified that he was present in the kitchen a few days after the accident when Eldridge told Schwahn how the accident occurred. Objection was made as to Paul testifying as to what was said, and sustained. Offer of proof outside the presence of the jury was then made that if Paul were allowed to testify that he would testify to those matters and things contained in plaintiff's Exhibit 2A.

Upon plaintiff's resting each defendant moved for a directed verdict; both motions were granted; plaintiff's post-trial motion was heard and overruled and judgment for defendants was entered.

■ Plaintiff contends the statement of Eldridge was an admission against interest, and amounts to a waiver of proof, and that its admission is not subject to it being made as part of the res gestae, and would make a prima facie case, and that it should not be denied being admitted into evidence, because the opposing party is denied the right of cross-examination, since a party has no right to cross-examine himself. He has sought to have the entire statement read into evidence, as if it were an evidence deposition. Since the statement was taken without stipulation, court order, or notice, and the defense was thus deprived of the right of cross-examination, the statement does not meet the statutory requirements, Ill Rev Stats, c 110, sections 58, 101.19–20, or a deposition. The statement can only be treated as one voluntarily made by one who was subsequently made a party. The fact that Eldridge as a party, had he been living at the time of trial, could have been called as an adverse witness under section 60 of the Civil Practice Act, and the defense could not have cross-examined him, is of no persuasive effect, since under section 60, the defense would have had a right to call him to explain any statements made.

■ ■ The parties here have argued the technical differences involved in true admissions, quasi-admissions, declarations, and when a voluntary statement is an admission against interest. Wigmore on Evidence, 3rd ed 1940, at § 1058, makes the distinction between the true admission and the quasi-admission. As there pointed out, the true admission is a formal act, done in the course of judicial proceedings, which waives or disposes with the production of evidence, by conceding for the purposes of litigation that the proposition of fact

alleged by the opponent is true; it concerns a method of escaping from the necessity of offering any evidence at all, and is a waiver relieving the opposing party from the need of any evidence, and is conclusive in the sense that it formally waives all right to deny, for the purposes of the trial; it removes the proposition in question from the field of disputed issues. The quasi-admission is extra judicial in character, an item of evidence, and not in any sense final or conclusive.

■■■■ Evidence of a statement by the defendant, or attributable to him, is admissible in behalf of the plaintiff where it tends to establish the defendant's liability or prove his responsibility for the wrongful act complained of, Norling v. Carr, 211 F2d 897; Susemiehl v. Red River Lumber Co., 306 Ill App 430, 28 NE2d 743. And a statement is admissible which tends to show that defendant considered himself liable for negligence, Adamsen v. Magnelia, 280 Ill App 418. As is said in Wigmore, "The opponent, whose utterance it is, may none the less proceed with his proof in denial of its correctness; it is merely an inconsistency which discredits, in a greater or less degree, his present claim and his other evidence." See also Supreme Court Rule 20, section 101.-20, Civil Practice Act. Such admission is likewise subject to the explanation of the party who has made it. Haskel v. Siegmund, 28 Ill2d 1, 170 NE2d 393.

■■ ■■ Here no one contends the statements of Eldridge are a part of the res gestae, and as a result we see no necessity of labeling the exhibits as admissions or declarations; Eldridge did not sign the transcript, so that at the most it must be viewed as an oral statement. Assuming that the statement met the requirements of being against interest, of sufficient reliance and materiality and of sufficient definiteness and certainty, that it was inadmissible as against the defendant Augustine's, Inc., is well settled under the Illinois cases.

235

In Fortney v. Hotel Rancroft, Inc., 5 Ill App2d 327, 125 NE2d 544, at 333, the court said:

"It is the settled rule in Illinois that an admission by an agent or employee, after the transaction is completed, or the incident occurred, which cannot be considered a part of the res gestae, is incompetent."

 ██ Our Supreme Court in Baier v. Selke, 211 Ill 512, 71 NE 1074, at 518, said:

"A declaration made concurrently with the acts and constituting a part of the res gestae is admissible in evidence, but where it is a mere narration in regard to a transaction already passed it does not bind the principal and cannot be proved."

 Here the contents of the statement are the sole evidence offered by plaintiff as to the conduct of Eldridge at the time of the occurrence, with exception of the testimony of plaintiff which is incompetent as to Eldridge's estate by reason of section 2 of the Evidence Act, but competent as against the defendant Augustine's, Inc. Plaintiff is dependent on it for his prima facie case of negligence, as against Eldridge's estate, and has attempted to introduce the entire statement, or its modified version, into evidence, and has not attempted to avail himself of the opportunity of making proof of only such parts of the statement as he considers admissions of negligent conduct.

 Evidence of oral declarations and admissions and conduct of a decedent cannot ordinarily be specifically contradicted, and as said in ILP, Evidence, § 196, it is generally regarded with suspicion as evidence of the weakest kind to which the courts lend a very unwilling ear, and is carefully scrutinized in connection with the circumstances under which such admissions were made, as well as considered with all of the other evidence in the

case. (See Illinois cases cited.) But an admission of a party, to be used against him must be unequivocal, and positive and definite in character. Here plaintiff's Exhibit 2 shows on its face the difficulty in communication between Eldridge and Schwahn, at the time it was taken. Schwahn on various occasions answered the questions himself, and admitted the difficulty of communication. Although Schwahn had worked with Eldridge at Augustine's the record does not show that either directed the other. The inherent difficulty under which the statement was obtained is evident. Our Legislature had recognized the difficulty in communcation with a deaf-mute or witness, and provided by section 48.01, ch 51, Ill Rev Stats:

> "Whenever any deaf-mute person is a party to any legal proceeding of any nature, or a witness therein, the court upon the request of any party shall appoint a qualified interpreter of the deaf-mute sign language to interpret the proceedings to and the testimony of such deaf-mute person."

Under this section the court would have the opportunity to pass on the qualifications of the interpreter. Schwahn stated that he did not claim to be "a qualified interpreter of the deaf-mute sign language" but stated that he was only an interpreter "for him" and had no schooling in deaf-mute sign language, but that Eldridge had taught him.

■■■ A reading of the entire statement convinces us that without further explanation, it does not meet the requirements of being unequivocal and positive and definite in character. It is not exactly what Eldridge said, but only what Schwahn understood Eldridge said, and Schwahn concedes that in some instances Eldridge did not understand the questions propounded. To be competent as an admission any statement should possess the same degree of certainty as would be required in the

evidence it represents. ILP, Evidence, § 131, CJS, Evidence, § 277.

"The question whether admissions or declarations are admissible in evidence is one to be determined by the court. The admission or rejection of the proffered evidence should be determined with a view to all the facts and circumstances of the case and the rules of law governing the admissibility of this kind of evidence. In a particular case, the admission of a statement in evidence may lie within the sound discretion of the court." Am Jur, Evidence, § 550.

■ Considering the content of the statement, the circumstances of its being taken, and the fact that there would be no opportunity for Eldridge to be called to explain the statement, and the fact that it was not being offered for impeachment but as substantive evidence, we cannot say that there was an abuse of discretion in denying the admission of plaintiff's Exhibits 2 and 2A. Without this evidence plaintiff made no case against the defendant Administrator, and the granting of that defendant's motion, and judgment should be affirmed.

Excluding the proffered statement, the competent evidence as to the defendant Augustine's, Inc., discloses that on the date of plaintiff's injury, Eldridge, a deaf-mute, was acting in the course of his employment, the circumstances of plaintiff's being on the premises before his escape from the surveillance of his grandmother, the condition of the vehicle and its equipment, the age of plaintiff as being 4½ years, and that plaintiff was never permitted in the area in which he was injured alone. In addition, plaintiff has testified that when he first saw Eldridge in the truck he was standing in front of the truck in an area to the left of the back door, that the truck was coming toward him, that he did not hear a horn, that Eldridge made no motion to him, that plain-

tiff screamed before he was hit, that he did not know what part of the truck hit him, but thought the front fender of the truck hit him. Plaintiff's medical bills, injuries and their permanence was stipulated to by the parties. Plaintiff obviously did not recall whether the truck was going forward or was backing when he was struck; and it is rather obvious from his testimony that he has no independent recollection of the occurrence, and we find that plaintiff's testimony has no probative value.

Defendants have urged that the status of plaintiff was that of an invitee who had exceeded the scope of his invitation to become a licensee or social guest, to whom the only duty is not to inflict injury willfully and wantonly, citing Jones v. Schmidt, 349 Ill App 336, 110 NE2d 688, Martin v. Cline, 15 Ill App2d 269, 145 NE2d 505, and the annotation, Child-Invitee or Licensee, 44 ALR2d 1319, 1321–1326 and 1337–1339, which support such contention. Plaintiff has failed to argue this point in his brief, and by his reply contends that such theory is applicable only in attractive nuisance cases where the condition of the premises is involved, and that plaintiff's theory of recovery is premised upon the active negligent conduct of the decedent in striking plaintiff with the vehicle. The evidence, however, does not include such active negligent conduct as would justify the case going to the jury, and as a result of insufficient evidence of negligence to make a submissible case, we do not reach the question of defendant's duty, or degree of care required.

Plaintiff has alleged that permitting a deaf-mute to operate a vehicle is negligence on the part of his employer. Here the vehicle was being driven on a portion of defendant's premises, which was not in use by the public on which at that time neither defendant nor Eldridge had any reason to anticipate that children would be present. While permitting a deaf employee to drive, under some circumstances might be sufficient evi-

239

dence of negligence to present a question of fact for a jury, we cannot say, under the facts in this case, that it is such evidence. Applying the test of foreseeability of injury to the competent evidence presented, we do not believe that reasonable men could conclude that Eldridge or defendant could or should have foreseen that plaintiff might be injured in this area by Eldridge, nor that either he nor the defendant corporation by its agents should have foreseen that this minor might escape from the surveillance of his grandmother and mother, and be found in an area where his very presence was a danger to his person.

Accordingly, the judgments in favor of both the Defendant Administrator of the Estate of Jewell Eldridge, deceased, and the Defendant Augustine's, Inc. are affirmed.

Affirmed.

MORAN and GOLDENHERSH, JJ., concur.