MARSHALL WRIGHT, Plaintiff-Appellant, *v.* ADONIS COMPANIA NAVIERA, S.A., Defendant-Appellee.

First District (1st Division)   No. 77-636

Opinion filed April 3, 1978.

Kaplan & Gold, of Chicago (Arthur S. Gold and Daniel F. Gallagher, of counsel), for appellant.

Bradley, McGovern, McMurray & Black, of Chicago (Michael A. Snyder, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Marshall Wright (plaintiff) sustained injuries when a bundle of steel coated with grease slipped from a pile of similar bundles he and fellow longshoremen employed by the International Great Lakes Shipping Company (Stevedore) were unloading from a vessel owned by Adonis Compania Naviera, S.A. (defendant) and docked in Chicago. Plaintiff filed a complaint in the circuit court seeking damages from defendant on the basis of negligence. Upon consideration of the pleadings, both parties' memoranda of law and plaintiff's deposition, the trial court granted defendant's motion for summary judgment.

On appeal plaintiff contends the trial court erred in granting the motion for summary judgment as genuine issues of material fact remain concerning whether the cargo was turned over to the Stevedore and its longshoremen in a reasonably safe condition and whether the defendant or the Stevedore was exercising control over the work area at the time of the mishap. Defendant responds that under the facts presented to the trial court and as a matter of law no genuine issues of material fact remain regarding the reasonably safe condition of the cargo because full responsibility for cargo handling operations rests upon the Stevedore and shipowners no longer owe longshoremen employed by the independent

Stevedore the nondelegable duty of providing a safe place to work. Defendant further contends plaintiff's deposition clearly established that the Stevedore was in control of the unloading operations at the time of the occurrence.

The record shows these facts: plaintiff and several fellow longshoremen employed by the Stevedore began unloading steel pipe from the bottom deck of the vessel *Adonis* at 8 a.m. on August 23, 1973. At 10 a.m. the longshoremen began unloading wrapped bundles of steel from the wings of the hold, directly beneath the decks of the vessel. These wrapped bundles, approximately 30 feet long and 1 or 2 feet wide, were coated with a greasy substance, apparently a rust preventive, which had seeped through the outer wrappings. The unloading procedure consisted of first bringing the bundles to the center of the hold with a forklift and placing them on the floor of the hold. A cable attached to a crane on the shore was then lowered into the hold. The workers would wrap heavy steel chain around the bundles and attach the ends of the chain to a hook on the cable, thus forming a noose-type grip allowing several bundles to be lifted from the hold in one operation.

The plaintiff, who was working in the center area of the hold, approached a small pile of bundles to pick up one of the ends of the steel chain. As he bent down, one of the bundles slid off the top of the other bundles and injured his left foot.

In his deposition the plaintiff stated the greasy condition of the bundles was a common sight to longshoremen, explaining, "a lot of times there's grease in it," and acknowledging that the grease often made the bundles slippery. The plaintiff also stated the Stevedore's foreman, who hired him, was directing the unloading operations and was in the hold at the time of the occurrence. The plaintiff stated no ship personnel were present at the time, although he recalled the presence of some ship officers in the hold at 10 o'clock that morning. The plaintiff noted that the unloading equipment, including the cables and chains, belonged to the Stevedore. There is no evidence in the record that the ship was rocking at the time of the accident.

Summary judgment should be granted "if the pleadings, depositions and admissions on file, together with the supporting affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (*Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87, 92, 312 N.E.2d 601.) We note that " 'the right to summary judgment must be clear beyond question' " (*Central Ice Cream Co. v. Sweetheart Cup Corp.* (1976), 40 Ill. App. 3d 43, 46, 351 N.E.2d 396, quoting from *Powell v. R. J. Anderson, Inc.* (1970), 124 Ill. App. 2d 1, 5, 260 N.E.2d 103), and that "[a] reviewing court must reverse an order granting summary judgment if it is determined that a

material question of fact does exist." *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1.

■■ Mindful of these principles, we are unable to agree with plaintiff's contention that a genuine issue of material fact remains as to whether the defendant turned over the wrapped bundles of steel to the Stevedore and its longshoremen in a reasonably safe condition. The standard of care which shipowners owe to longshoremen employed by independent stevedores engaged in unloading cargo operations is governed by the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. §901 *et seq.* (1970 & Supp. V 1975) (hereinafter cited as LHWCA)). We note that in the type of proceeding before us State courts are required to apply the Federal decisional law construing Federal statutes without regard to State common law concepts of negligence. (*Urie v. Thompson* (1949), 337 U.S. 163, 174, 93 L. Ed. 1282, 1295, 69 S. Ct. 1018, 1027; *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, 34, 230 N.E.2d 173, *cert. denied* (1968), 390 U.S. 949, 19 L. Ed. 2d 1140, 88 S. Ct. 1038.) Upon consideration of the appropriate statutory section of LHWCA and the Federal decisions interpreting this provision as it applies to negligence actions filed by injured longshoremen against shipowners, it is our opinion that, as a matter of law, the responsibility for injuries sustained by the plaintiff in the instant case had passed to the Stevedore at the time of the occurrence.

Section 5(b) of LHWCA (33 U.S.C. §905(b) (Supp. V 1975)), provides as follows:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

This section, as presently amended, relieves the shipowner of liability if the longshoreman's injuries resulted from the negligence of those engaged in providing stevedoring services (*Gay v. Ocean Transport & Trading, Ltd.* (5th Cir. 1977), 546 F.2d 1233, 1239-40), and it abrogates prior law which based the liability of the vessel upon the warranty of seaworthiness. *Bess v. Agromar Line* (4th Cir. 1975), 518 F.2d 738, 740-41.

■■ We recognize, as plaintiff urges, that despite the addition of section 905(b) to the LHWCA, a longshoreman injured aboard a vessel while unloading cargo may still maintain a cause of action in negligence against the shipowner if it can be shown that the shipowner failed to adhere to the appropriate standard of care. In determining the standard of care presently owed by shipowners to longshoremen under section 905(b), the Federal courts have relied upon these three factors:

(1) the guidelines provided by the House Report accompanying section 905(b), with particular reference to that portion of the report stating that "the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work." H.R. Rep. No. 1441, 92d Cong., 2d Sess. 6, reprinted in 3 U.S. Code Cong. & Ad. News 4698, 4704 (1972);

(2) sections 343 and 343A of the Restatement (Second) of Torts (Restatement (Second) of Torts §§343, 343A (1965)) which pertain to the liability of land possessors to invitees. This source has been referred to as a "land-based principle * * *" which is a "guide in the establishment of a federal law." *Gay v. Ocean Transport & Trading, Ltd.* (5th Cir. 1977), 546 F.2d 1233, 1238; see also *Frasca v. Prudential-Grace Lines, Inc.* (D. Md. 1975), 394 F. Supp. 1092, 1097;

(3) and policy considerations on a case-by-case basis in the application of traditional land-based principles of negligence in cases involving the actual practices of vessel owners. *Napoli v. Hellenic Lines, Ltd.* (2d Cir. 1976), 536 F.2d 505, 509; *Gallardo v. Westfal-Larsen & Co. A/S* (N.D. Cal. 1977), 435 F. Supp. 484, 490.

Upon consideration of the above mentioned sources and case law precedent developed subsequent to the addition of section 905(b) to LHWCA, one Federal court has recently articulated the applicable standard of care owed by shipowners to longshoremen pursuant to section 905(b) as follows:

> "Before the commencement of stevedoring operations, the owner of a vessel in navigable waters has a duty to take reasonable remedial action with respect to all unreasonably dangerous conditions of which it has actual or constructive knowledge. After the commencement of stevedoring operations, the owner of a vessel in navigable waters has a duty to take reasonable remedial

action with respect to all unreasonably dangerous conditions of which it has actual knowledge."

*Gallardo*, 435 F. Supp. 484, 490; accord, *Espinoza v. United States Lines, Inc.* (S.D. N.Y. Jan. 6, 1978), 46 U.S.L.W. 2361; *Davis v. Inca Compania Naviera S.A.* (W.D. Wash. 1977), 440 F. Supp. 448, 457.

Plaintiff vigorously contends that in the instant case defendant breached its duty of care by presenting to plaintiff and the other longshoremen an unreasonably dangerous condition when requiring them to unload slippery bundles of steel coated with grease. We have concluded that plaintiff's theory of liability predicated upon the condition of the steel bundles must necessarily be rejected. In our opinion, in the instant case, the responsibility for unloading the cargo had passed to the Stevedore at 8 a.m. when the longshoremen began the unloading operations under the direction of the Stevedore's foreman. As plaintiff's deposition revealed, handling slippery cargo such as the wrapped steel bundles was an ordinary duty to longshoremen engaged in such an operation. Therefore, regardless of whether or not the ship personnel visited the hold at 10 a.m., and the defendant thereby had actual or constructive knowledge of the condition of the steel bundles, the unloading responsibility had passed to the experienced Stevedore at the time plaintiff was injured.

*Ramirez v. Toko Kaiun K.K.* (N.D. Cal. 1974), 385 F. Supp. 644, is a prime authority which supports our conclusion that, as a matter of law, defendant no longer owed a duty to plaintiff at the time of the injury. There, a longshoreman was injured when a steel pipe attached to a crane and being raised from the hold slipped, causing an unevenly stacked bundle of pipes to spill onto the plaintiff's foot. In rejecting plaintiff's contention that the unusual method of stowing the cargo caused the injury and therefore placed liability upon the shipowner, the court noted that "primary responsibility for the safety of the longshoreman lies with the stevedoring company" which is "in the position best to provide for the safe unloading of the cargo." (*Ramirez*, 385 F. Supp. 644, 653.) This conclusion was also reached in *Munoz v. Flota Merchante Grancolombiana, S.A.* (2d Cir. 1977), 553 F.2d 837, wherein the court noted "a shipowner cannot be liable in damages when he relinquishes control of the hold, then in a reasonably safe condition, to an experienced stevedore pursuant to a contract to supply services within its normal competence * * *." *Munoz*, 553 F.2d 837, 841.

We also note that the record presented to the trial court revealed no facts in support of the plaintiff's contention that slippery bundles of steel constituted "the type of danger that must be faced notwithstanding knowledge." (*Gay v. Ocean Transport & Trading, Ltd.* (5th Cir. 1977),

546 F.2d 1233, 1242.) After the hearing on the motion for summary judgment, the trial court granted plaintiff 30 days to file additional affidavits in support of his contention that the steel bundles were of such a peculiar nature as to require warning of their condition. Plaintiff cites this order as an indication that genuine issues of material fact remained unresolved regarding the nature of the steel bundles. In our opinion, this order merely reflects a laudable and conscientious effort by the careful trial judge to make certain that there was no genuine issue as to any material fact. Plaintiff's failure thereafter to present to the trial court any additional affidavits or other evidence regarding the condition of the steel bundles only reinforces our conclusion that no genuine issues of material fact remained which would preclude the entry of summary judgment.

We are also unable to accept plaintiff's contention that genuine issues of material fact remained regarding the identity of the party in control of the unloading operations. Plaintiff's deposition established that for approximately six hours prior to the occurrence the foreman who had hired plaintiff was directing unloading operations and was in the hold at the time of the injury. There was no evidence that any ship personnel participated in the supervision or control of the unloading process. In plaintiff's deposition he testified directly that no ship officers were present when he sustained the injury. Plaintiff's unsupported claim does not raise factual issues when the record revealed "only evidentiary facts to the contrary." *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 381, 313 N.E.2d 457.

The summary judgment entered in favor of the defendant is proper and therefore affirmed.

Summary judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.