GEORGE YAKSIC, Plaintiff-Appellant, v. CECO CORPORATION *et al.*, Defendants-Appellees.

First District (6th Division) No. 1—88—3259

Opinion filed May 4, 1990.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Jeffrey M. Shancer and James J. Morici, Jr., of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Robert E. Sweeney, Jr., Hugh C. Griffin, and Paul J. Peralta, of counsel), for appellees.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, George Yaksic, filed a personal injury action against the defendant, Ceco Corporation (Ceco), for damages sustained when he tripped and fell on metal banding while he was working on the sec-

ond-floor deck of a Chicago Transit Authority garage which was under construction in Chicago. He alleged that the metal banding belonged to Ceco. Ceco denied the allegation. The judgment entered summary judgment in favor of Ceco. The only issue is whether the record established, as a matter of law, that the banding was not owned by Ceco.

On August 9, 1982, Walsh Construction Co. (Walsh) was the general contractor for the construction of a Chicago Transit Authority parking garage located at Cumberland Avenue and the Kennedy Expressway in Chicago. The plaintiff was an ironworker employed by Walsh.

Ceco was a decking subcontractor that installed plywood decks before Walsh installed its reinforcing steel and before it poured its concrete to complete the deck. By the terms of its contract, Ceco was required to keep the building and premises clean of debris arising out of its work. However, it was not responsible for unclean conditions caused by others.

On August 9, 1982, the plaintiff was walking along the plywood second floor of the garage carrying support steel rods and steel ties. At approximately 11 a.m., as he approached his crew carrying a handful of steel ties, his feet became entangled in some banding; he fell and was injured. He described the banding as "maybe one inch wide, like a sixteenth of an inch thick *** [and] three or four feet long."

In its motion for summary judgment Ceco introduced the following: (1) the deposition testimony of the plaintiff describing the metal band he tripped over; (2) the deposition testimony of Gerald Johnson, a Walsh employee, that he saw the plaintiff trip over one piece of metal banding. He described the banding as "basic band material, approximately one inch wide, maybe an inch and one-half *** thin, sixteenth of an inch thin material banding"; (3) the affidavit of Joseph Rothenberger, Ceco's foreman at the site, that the metal banding used by Ceco was only three-quarters of an inch wide and less than one-thirty-second of an inch thick and that the banding used by Walsh was 1¼ or 1½ inches wide and one-sixteenth of an inch thick; and (4) the deposition testimony of William Freiberg, Walsh's foreman at the site, that Ceco bands were less wide than Walsh bands and that Walsh used bands at least one inch wide.

In his response to the motion for summary judgment, the plaintiff introduced excerpts from the depositions of Rothenberger, Johnson, the plaintiff himself and Freiberg. The plaintiff testified that no one beside Ceco had the kind of banding that he tripped over. He also testified that, in addition to the metal banding, he also tripped over

"scrap, two by four cut-outs and plywood cut-outs."

Rothenberger testified that Ceco's plywood came banded, that Ceco was responsible for and did remove the banding at the jobsite; that after Ceco completed its work, there would be debris such as black metal bands in the decking area; that scraps and plywood were by-products of its work; that Ceco was aware of the danger of such debris and was obligated to clean up all its debris.

Johnson was a working union steward. He testified that on more than one occasion he complained to Ceco about its banding or scrap wood on the deck. He complained about the banding to Ceco on the day of the accident about 8:30 or 9 a.m. Johnson told the Ceco representative to clean up the debris; he mentioned the banding, all the cut-offs, all Ceco's "garbage up there." Ceco's foreman said that he would get somebody on it. No one cleaned up the material between the time Johnson complained and the time Yaksic fell.

The judge first denied the motion for summary judgment, and in the order of denial noted that there was no evidence that Ceco had cleaned up the area where the accident occurred. Five weeks later, Ceco submitted another affidavit of Rothenberger in which he swore that he had personal knowledge that Ceco had removed all of its debris from the site before the accident occurred. The judge later heard Ceco's motion to reconsider and granted the motion for summary judgment.

The defendant's position capsulized is, first, that the testimony of the plaintiff and Johnson established, as a matter of law, that the banding that caused the accident was larger than the banding used by Ceco and, second, that Rothenberger's affidavit established, as a matter of law, that Ceco had cleared away its debris before the accident occurred. We disagree with both parts of the defendant's position.

The first question is whether a fact finder could conclude that the banding was Ceco's. We believe that a fact finder could so conclude. The plaintiff testified as follows:

"A. I got tangled up in some banding and some scrap that was there, some two-by-four cut-outs or plywood cut-outs. It was just a little scrap from the job.

Q. You mentioned some banding?

A. Yes. It wasn't our nine wire from our steel. It was like the carpenter's, any time they have wood come up from the job, they usually have it banded with this thick one-inch, two-inch wide black banding.

It's like a 16th of an inch thick. It's just to hold it together. When I was carrying them, I got tangled up. It wasn't a big a

pile of garbage. It was just strewn about.

\* \* \*

Q. What, specifically, was banded with the banding?

A. Four-by-fours come in banded. Two-by-fours come banded. Sheets of plywood come banded. None of our steel comes banded. All of our steel usually has nine wire on it, real thick wire.

\* \* \*

Q. Is there any way that you could tell that this particular banding that you got tangled up in came from the carpenters?

A. Nobody else had it. None of our steel come [sic] in there. I seen [sic] their lumber all banded up, big bundles. I am talking about five, six feet high, four-by-fours all in a big bundle.

That's all that's holding it—banding. There's [sic] long pieces and short pieces. It all depends where they cut them when they open them up or how big the bundles are."

Contrary to the defendant's argument, the plaintiff's testimony that he tripped over Ceco's banding is not conclusional. The plaintiff had seen the banding used by Ceco on previous occasions, and he saw the banding that he tripped over.

Freiberg was shown and identified banding used by Walsh and banding used by Ceco. The Walsh banding was 1¼ inches wide; the Ceco banding was three-quarters of an inch wide. Freiberg did not recall ever seeing a band like the Walsh band lying on the second-floor deck where the accident occurred. The Walsh carpenters cut lumber on the ground level; Ceco carpenters cut lumber at the deck on the second floor. The steel that the plaintiff picked up was not banded; it was tied with Number 9 wire. (It is conceded by Ceco that the accident was not caused by Number 9 wire.)

■ We do not accept the defendant's contention that the testimony of the plaintiff and Johnson established that the banding was not Ceco's. The plaintiff said the banding was "maybe one inch wide"; Johnson said it was "approximately an inch wide, maybe an inch and a half." (Emphasis added.) It is true that they expressed an estimate as to the size of the banding that caused the accident, but their testimony was just that—an estimate, or an opinion. (The bandings that were shown to Freiberg by the defendant were not shown to the plaintiff or Johnson.) To hold now that the plaintiff and Johnson were able to distinguish between banding one inch wide and three-quarters of an inch wide and a thickness of one-sixteenth of an inch and one-thirty-second of an inch is to impute to them micrometrical vision. We judge, therefore, that a question of fact remains as to the size of the

banding that caused the accident.

The next question is whether a fact finder could conclude that Ceco had not cleared away its debris before the accident. Again we believe that a fact finder could so conclude. In support of its position, the defendant relies on an affidavit of Rothenberger.

Rothenberger gave a deposition and submitted two affidavits. In his deposition he said he had no personal knowledge or recollection whether there was any accumulation of Ceco's debris in the area where the plaintiff fell. He had "no idea" as to the condition of the second-floor deck of the garage on the day of the accident. He did not know whether Ceco had completed its carpentry work at the time of the accident.

Ceco would strip forms after the concrete was poured. Stripping created debris. Pieces of wood would have to be taken down and Ceco's laborers would have to clean up the forms. A lot of debris was left over and had to be cleaned up after laying the deck before concrete was poured. The debris included bands and cut-outs. Ceco's laborers had to clean up the area as soon as possible after the deck was laid because the concrete would have to be poured. *Walsh was the one that really pushed the clean up.*

In his first affidavit, which was attached to the motion for summary judgment, Rothenberger swore that the metal banding used by Ceco was three-quarters of an inch wide and less than one-thirty-second of an inch thick and that Walsh used banding that was wider and thicker than the Ceco banding.

After the judge denied the motion for summary judgment and pointedly noted that he found no evidence as to whether Ceco cleaned up the area where the accident occurred, Ceco submitted a second affidavit of Rothenberger. That affidavit recited, in part, as follows:

> "After each section of deck was installed, I made sure that all debris was cleared off the deck.
>
> I have no personal knowledge as to the condition of the upper deck on August 9, 1982 in the area where George Yaksic was allegedly injured. However, I do have personal knowledge that all debris had been cleared off that section of deck after Ceco installed it and before the ironworkers brought their own material onto it. There were no pieces of banding on the deck after Ceco installed it and before the ironworkers began working on it."

The defendant asserts that the belated affidavit of Rothenberger was uncontradicted. That assertion ignores the testimony of Johnson. Johnson said that scrap material on the deck was "material left over

from Ceco's laying the deck." He said there was no debris on the deck from Walsh's work. Approximately two hours before the accident Johnson told a Ceco representative to clean up the debris; he specifically mentioned the banding. The Ceco foreman said that he would get somebody on it, but no one cleaned up the material between the time Johnson complained and the time the plaintiff was injured. Johnson's testimony that he had complained to Ceco on a number of occasions about debris is corroborated to some extent by Rothenberger, who testified that Walsh was the one who really "pushed the cleanup."

■■ We need not pass on the weight of the second affidavit of Rothenberger when compared with his deposition nor the conclusional aspects of his affidavit. Even if we were to assume that Rothenberger swore that he actually saw the Ceco workers clear away the debris before the accident, and even if he had never admitted in a deposition that he had no personal knowledge whether there was any accumulation of Ceco's debris in the area where the plaintiff fell, we would still be required to hold that whether Ceco had cleaned up its own debris was a question of fact to be decided by a jury, which would weigh the credibility of Johnson and Rothenberger. We hold, therefore, that Johnson's testimony does contradict the affidavit of Rothenberger.

■■ ■ In passing on summary judgment motions, the evidence must be construed strictly against the moving party and liberally in favor of the opposing party. (*Wha Ja Yu v. Neenah Foundry Co.* (1987), 164 Ill. App. 3d 975, 518 N.E.2d 635.) The right to summary judgment must be free from all doubt. (*Wright v. Adonis Compania Naviera, S.A.* (1978), 59 Ill. App. 3d 108, 376 N.E.2d 4.) In construing the evidence liberally in favor of the plaintiff, we conclude that any right to summary judgment on behalf of the defendant would not be free from all doubt.

■■ In arriving at our decision, we have not considered an affidavit of Freiberg which was attached to the plaintiff's brief but had not been made part of the record on appeal. See *Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628, 472 N.E.2d 1203.

For the reasons given, the judgment of the circuit court is reversed and remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

McNAMARA and RAKOWSKI, JJ., concur.