RUANE et al., and the Jockeys' Guild, Inc. on behalf of all member jockeys licensed in the State of New York, Plaintiffs,

v.

The **NEW YORK STATE RACING AND WAGERING BOARD** and the Board of Stewards designated and approved by the New York State Racing and Wagering Board, Defendants.

No. 75 Civ. 852.

United States District Court,
S. D. New York.

Aug. 28, 1975.

©—211

Jackson, Nash, Brophy, Barringer & Brooks, New York City, for plaintiffs by Lawrence B. McGauley, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., State of N. Y., for New York State Racing and Wagering Bd. and New York State Stewards, defendants by Mortimer Sattler, Asst. Atty. Gen., of counsel.

Cahill Gordon & Reindel, New York City, for New York Racing Assn., Inc. and the Jockey Club, defendants by David R. Hyde, Miles M. Tepper, Russell T. Lewis, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The plaintiffs Ruane, a jockey, and the Jockeys' Guild, Inc. ("Guild"), a national association which represents the interests of member jockeys, bring this civil rights action against the New York State Racing and Wagering Board ("Board") and the Board of Stewards [1] pursuant to 42 U.S.C. § 1983. The complaint requests monetary, declaratory, and injunctive relief because of certain state statutes and rules relating to the running of New York race tracks and actions taken pursuant to those statutes and rules. The plaintiffs have also requested preliminary injunctive relief from the operation of the challenged statutes and rules.

The events giving rise to the suit are as follows. On September 21, 1974, the plaintiff Ruane and seven other jockeys refused to ride in the seventh race at Belmont Park. That race was to be run on the turf track. The jockeys contend that they refused to ride because they believed the turf track would be dangerous as a result of rainfall. According to plaintiffs, the jockeys requested that the race be transferred to the dirt track on which all the other races were being run that day. There is some dispute as to how promptly the jockeys voiced their concern to the stewards. When the race was not transferred to the dirt track, Ruane and the seven others refused to ride. Their mounts were offered to other jockeys, some of whom accepted. The race was conducted on the turf track with a reduced number of entries. There were no casualties.

On September 23, 1974, the jockeys who had refused to ride were fined $250 each by the stewards. The fines

---

1. Actually there is no such entity as the Board of Stewards. The composition and role of the Stewards at a race meeting is set out at page 821, *infra.*

were paid under protest. This disciplinary action was subsequently approved on March 17, 1975 by the Board after a full evidentiary hearing.

Under the legislative scheme for throughbred racing in New York State, the defendant Board is the regulatory agency which oversees all racing. The New York State Racing Commission ("Commission") is a subsidiary of the Board and has the power to supervise race meetings and adopt and promulgate rules necessary to that end. See N.Y. Unconsolidated Laws § 7908 (McKinney 1973).

At each race meeting three stewards perform supervisory duties. One steward is the official steward of the Board; one steward is appointed by the appropriate jockey club, steeplechase, or hunt association; and one steward is appointed by the corporation or association conducting the event. N.Y. Unconsolidated Laws § 7914 (McKinney 1973).[2]

Plaintiffs, in their complaint, challenge this scheme and its operation in several respects. They oppose their fines as having been imposed without prior notice and a hearing, alleging a constitutional due process violation. They challenge certain rules promulgated by the Commission as violating due process in their vagueness. Finally, they argue that the composition of the stewards violates the equal protection clause of the fourteenth amendment by failing to include a representative of the jockeys.

The motion for a preliminary injunction requests that I prohibit: (1) defendants from conducting races at Aqueduct prior to a unanimous decision by the stewards plus a representative of the Jockeys' Guild, Inc., and (2) the stewards from disciplining jockeys who refuse to ride on grounds of hazardous conditions until the Board promulgates administrative procedures to protect the jockeys.

■ Although the requested preliminary and permanent relief sought involves, in part, injunctive relief from a state statutory scheme, a three-judge court will not be convened pursuant to 28 U.S.C. § 2281 et seq. since I find the constitutional challenges to be friviolous and wholly without merit. See *Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

■ I find that plaintiffs are not entitled to preliminary injunctive relief since not only have they failed to show a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, but also they have failed to demonstrate any possible irreparable harm[3] or balance of hardships tipping decidely in their favor.[4] See *Gresham v. Chambers,* 501 F.2d 687 (2d Cir. 1974); *Gulf & Western Indus., Inc. v. Great Atlantic & Pacific Tea Co., Inc.,* 476 F.2d 687 (2d Cir.), aff'd 356 F. Supp. 1066 (S.D.N.Y.1973).

In any case, the plaintiffs' failure on the first part of both tests for a preliminary injunction also dictates dismissal of their complaint. For the sake of clarity, the various claims raised by plaintiffs will be dealt with in the following order: (1) the propriety of the fines; (2) the lack of notice and a hearing prior to imposition of the fines; (3) the alleged vagueness of certain of

2. On September 21, 1974, the stewards were from (1) the Board; (2) The Jockey Club, apparently an organization composed of owners, trainers and breeders of thoroughbred horses; and (3) the New York Racing Association, Inc. which owns the Belmont, Aqueduct and Saratoga racetracks.

3. Plaintiffs claim serious physical danger if they are forced to ride in races they deem to be unsafe. However, there is no coercion that they ride. Jockeys may refuse to ride and seek review of any penalty imposed on them by virtue of that refusal. See Racing Rule 22.15 and discussion at page 7.

4. The possible loss of public confidence and/or revenue which the state might suffer were the preliminary relief granted far outweighs the risk of discipline which jockeys might encounter in refusing to ride. The jockeys may seek review of any discipline pursuant to Racing Rule 22.15.

the Racing Rules; and (4) the equal protection challenge to the composition of the stewards.

■ The imposition of the $250 fines has been affirmed, as noted above, by the Board after a full evidentiary hearing, the record of which I have before me and have reviewed. The fines were imposed pursuant to Racing Rule 40.6 authorizing punishment for refusal to ride. The Board has found that the "belated refusal . . . to ride . . was calculated to cause turmoil and chaos." I can see no reason for substituting my judgment on this question for that of the Board after a full hearing.

■ The due process challenge to the lack of notice and hearing prior to the imposition of a fine is equally unpersuasive. The plaintiffs, in pressing their claim that a prior hearing is constitutionally mandated, cite the Appellate Division (1st Dept.) opinion in *Tappis v. New York State Racing and Wagering Bd.,* (unreported) in which the imposition of a $100 fine on a trainer who violated a Board rule was annulled for failure to provide a prior hearing. That decision has since been reversed by the New York Court of Appeals on May 13, 1975. The Court of Appeals found a "compelling and substantial state interest" in maintaining discipline among trainers and owners. A similar interest applies to the question of discipline among jockeys. Accordingly, where, as here, subsequent review of the penalty is available, I find no violation of the due process clause. See *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406

(1974); *Hubel v. West Virginia Racing Comm'n,* 513 F.2d 240 (4th Cir. 1975).

The attack on certain of the Racing Rules on the grounds of vagueness is likewise flawed. Count 3 of the Complaint charges that rules 22.8 and 22.21 are void for vagueness in that they grant the stewards too much discretionary power. The memorandum in support of the motion for a preliminary injunction makes the same charge as to rules 22.11 and 22.16.

However, these are not the rules pursuant to which the stewards acted in fining the jockeys who refused to ride. Rather, they were punished under rule 40.6 which authorizes punishment of a jockey "engaged for a race or for a specific time [who] refuses to fulfill his engagement." There can be no mistake about the conduct which may be punished pursuant to this rule. Moreover, rule 40.6 limits the modes of punishment available by referring specifically to rules 22.12–22.15 which authorize exclusion, suspension, or civil penalty and provide the right to appeal any such punishment to the Commission.

■ The rules challenged by the complaint[5] are clearly not those pursuant to which plaintiffs were fined. I will not exercise the discretionary power of granting a declaratory judgment as to the rules cited by plaintiffs since I find that no "case of actual controversy" is presented. See 28 U.S.C. § 2201; Correspondence & Public Papers of John Jay, Vol. 3, p. 486; *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

■ Finally, the attack on N.Y. Unconsolidated Laws, § 7914 (McKinney

5. In passing, I note that the grant of discretionary power to the stewards to (1) make and vary arrangements for the races (rule 22.8); (2) regulate the conduct of officials, owners, trainers, jockeys, etc. (rule 22.11); (3) determine all questions arising in reference to racing at the meeting, subject to appeal to the Commission, (rule 22.16); and (4) determine any case not specifically provided for by the rules (rule 22.21) all appear necessary to the efficient running of the races. It would be illogical and inefficient to require that the rules specifically anticipate every contingency which might arise during a race meeting. See *Lichter v. United States,* 334 U.S. 742, 785, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948). Moreover, the case cited by plaintiffs in support of their vagueness argument relate to statutes which impinge on first amendment rights and are inapposite here.

1973) must fall. That section provides for the composition of the stewards at each race meeting. Plaintiffs assail it as violating their right to equal protection. The test to be applied to this statute is one of limited scrutiny or rational relationship since no fundamental right or suspect classification is involved. As such, the plaintiffs' claim of unconstitutionality can succeed only if no state of facts reasonably may be conceived of to justify the claimed discrimination. *Bynes v. Toll,* 512 F.2d 252, 254 (2d Cir. 1975). The state interest in guarding the integrity of racing; in maintaining the public's confidence; and in preserving discipline at the track are all reasonable grounds which justify the non-inclusion of jockeys or their representatives among the stewards.

For all of the foregoing reasons the motion for a preliminary injunction is denied and the complaint is dismissed.

So ordered.