Arthur BUTLER,
Plaintiff-Appellant-Cross
Appellee,

v.

STOVER BROTHERS TRUCKING COMPANY, a corporation, and William D. Paulson, Defendants-Appellees-Cross Appellants.[*]

Nos. 76–1526, 76–1527.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1976.

Decided Jan. 10, 1977.

Rehearing and Rehearing En Banc Denied
March 24, 1977.

---

* *Editor's Note:* The opinion of the U. S. Court of Appeals for the Third Circuit in *U. S. v. Trzcinski*, published in the advance sheets at this citation (546 F.2d 544) was withdrawn from the bound volume at the request of the court and will be republished.

Marvin Riman, Elliott R. Schiff, Chicago, Ill., for Stover Bros.

Gates W. Clancy, Geneva, Ill., for Butler.

Before BAUER and WOOD, Circuit Judges, and GRANT, Senior District Judge.*

WOOD, Circuit Judge.

In this diversity case, Arthur Butler (hereinafter referred to as plaintiff) brought suit against William D. Paulson and Stover Brothers Trucking Company

* Senior District Judge Robert A. Grant, of the United States District Court for the Northern District of Indiana, is sitting by designation.

(hereinafter referred to as defendants) for injuries suffered in a three-way motor vehicle collision.[1] Two questions are raised for our consideration on appeal: 1) whether defendant filed a timely notice of appeal and 2) whether the lower court properly ruled that collateral estoppel barred relitigation of the issue of defendants' negligence in this case.

For the following reasons we believe that defendants' notice of appeal was timely filed. We also find, however, that the trial court improperly applied collateral estoppel to the issue of defendants' negligence.

## 1. Timeliness of Notice of Appeal

Defendants filed a notice of appeal within 30 days of a judgment entered by the lower court on March 25, 1976. Plaintiff has appealed the entry of judgment by the lower court as of March 25, 1976. Plaintiff asserts that judgment was properly entered on December 12, 1975, and, therefore, defendants' appeal is not timely.

The question as to whether defendants' appeal was timely depends on when judgment was entered pursuant to Fed.R.Civ.P. 58 and 79(a).[2]

The facts are as follows:

On December 12, 1975, the jury held against defendants and awarded plaintiff $200,000 in damages. Responding to a question by counsel for plaintiff, the trial judge indicated that judgment would not be entered on the verdict until after the post-trial motions were decided:

The Court: You may have ten days to file a post-trial motion.

Mr. Riman: Will judgment be entered on the verdict?

The Court: After I have ruled on his motion.

Mr. Riman: Fine. Thank you, your Honor.

On the same day, December 12, 1975, the clerk prepared and signed a judgment on behalf of plaintiff on a separate document. The clerk also on December 12, 1975, en-

---

1. Plaintiff's complaint also sought recovery from Container Corporation of America in Count I. Count II of plaintiff's complaint was directed at defendants, Stover Brothers Trucking Company and Paulson. The lower court on December 4, 1975, granted plaintiff's Motion to Non-Suit Container Corporation. Since the present appeal does not concern Container Corporation of America, we will discuss only so much of the case as is relevant to the issues raised on appeal.

2. Rule 58 provides:

Subject to the provisions of Rule 54(b): (1) upon a general verdict of a jury, or upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court; (2) upon a decision by the court granting other relief, or upon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it. Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a). Entry of the judgment shall not be delayed for the taxing of costs. Attorneys shall not submit

forms of judgment except upon direction of the court, and these directions shall not be given as a matter of course.

Rule 79(a) provides:

(a) *Civil Docket.* The Clerk shall keep a book known as "civil docket" of such form and style as may be prescribed by the Director of the Administrative Office of the United States Courts with the approval of the Judicial Conference of the United States, and shall enter therein each civil action to which these rules are made applicable. Actions shall be assigned consecutive file numbers. The file number of each action shall be noted on the folio of the docket whereon the first entry of the action is made. All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made. When in an action trial by jury has been properly demanded or ordered the clerk shall enter the word "jury" on the folio assigned to that action.

tered the following notation on the civil docket: "Filed Jury verdict—Rule 58."

The lower court on February 3, 1976, denied defendants' post-trial motions.

On March 17, 1976, defendants sought leave to appeal from the district court pursuant to Fed.R.App.P. 4(a) based upon excusable neglect. Defendants filed an alternative motion on March 25, 1976, arguing that a judgment on the verdict had not been entered as required by Fed.R.Civ.P. 58 and 79(a).

Argument was heard by the lower court on defendants' motions on March 25, 1976. At that time, neither the lower court nor counsel for either side was aware of the fact that the clerk had on December 12, 1976, entered a judgment on behalf of plaintiff. As a result, the court on March 25, 1976, ordered that judgment be entered on behalf of plaintiff for $200,000.

Defendants on April 20, 1976, filed notice of appeal. Plaintiff on April 23, 1976, cross-appealed from the lower court's entry of judgment as of March 25, 1976.

Plaintiff argues that defendants' appeal should be dismissed on the ground that it was not timely filed. Plaintiff contends that the clerk properly entered judgment on December 12, 1975, under the provisions of Rule 58(a) since the trial court did not order otherwise. Despite the court's statement that a judgment on the verdict would not be entered prior to ruling on the post-trial motion, plaintiff asserts that the court mandated entry of judgment by the clerk when it signed the following order on December 12, 1975, granting leave to defendants to file a post-trial motion:

Leave to Defendants to file post-trial motions by December 29, 1975 and leave to Plaintiff to respond in five days thereafter. Cause continued to January 9, 1976 for hearing on post-trial motions.

In addition, plaintiff asserts that language employed by the court in denying defendants' post-trial motion on February 3, 1975, reaffirmed the clerk's conduct. The order denying the post-trial motion provided:

The Defendants' post-trial motion is hereby denied. The verdict of the jury will stand.

Finally, plaintiff contends that since the judgment entered on March 25, 1976, did not affect the substance of the judgment entered on December 12, 1975, entry of the second judgment does not affect the time requirements for post-trial motions or appeals.

Defendants assert that at the time the jury's verdict was returned on December 12, 1975, the court reserved entry of a judgment until after ruling on the post-trial motions. Defendant contends that entry of judgment on December 12, 1975, was unauthorized and that time for appeal properly ran from March 25, 1976.

For the following reasons we believe that defendants' appeal was timely filed.

"One important objective of the 1963 revision of Rule 58 was to clarify at what point there is a judgment that is effective for purposes of commencing the time for appeal or post-judgment motions." 6A J. Moore, Federal Practice ¶ 58.02, at 58–55 (hereinafter cited as Moore). The Court in *United States v. Indrelunas,* 411 U.S. 216, 219–20, 93 S.Ct. 1562, 1564, 36 L.Ed.2d 202 (1973), analyzed Rule 58 as follows:

Rule 58 was substantially amended in 1963 to remove uncertainties as to when a judgment is entered and to expedite the entry of judgment by limiting the number of situations in which the court need rely on counsel for the prevailing party to prepare a form of judgment. The first sentence of the rule describes "simple" judgments, providing for recovery of only a sum certain, of costs or of nothing. These clause (1) judgments are to be prepared, signed, and entered by the clerk without direction by the court. Clause (2) of that sentence deals with the more "complex" forms of judgment, which are to be entered by the clerk after the court approves the form of the judgment. The rule then continues that "[e]very judg-

ment shall be set forth on a separate document," and further states that "[a] judgment is effective only when so set forth and when entered as provided in Rule 79(a)."

Thus, the clerk is under a standing instruction pursuant to Rule 58 to enter a judgment forthwith upon a clause (1) general verdict. Moore, ¶ 58.04[2], at 58–121.

This general instruction is, however, subject to two qualifications: "(1) the provisions of Rule 54(b) determine the finality of a judgment in an action that involves multiple claims or parties; and (2) the court may order otherwise." Moore, ¶ 58.04[2], at 58–122. "The second qualification clearly recognizes that the district court has the power to order the clerk not to enter judgment forthwith upon the general verdict, as where the court has before it a motion for judgment n. o. v. pursuant to Rule 50(b) or a motion for a new trial." Moore, ¶ 58.-04[2], at 58–123.

■■■ Entry of judgment involves a ministerial duty by the clerk. Moore, ¶ 58.02, at 58–56; Fed.R.Civ.P. 58, Notes of the Advisory Committee on Rules, 1963 Amendment; *Gilbertson v. United States*, 168 F. 672 (7th Cir. 1909). If the clerk fails to stay within authority given him by statute, entry of judgment by the clerk is void. Moore, ¶ 58.06, at 58–261–62; *Midwestern Developments, Inc. v. City of Tulsa, Oklahoma*, 319 F.2d 53 (10th Cir. 1963), *cert. denied*, 379 U.S. 989, 85 S.Ct. 702, 13 L.Ed.2d 610; *O'Brien v. Harrington*, 98 U.S.App. D.C. 138, 233 F.2d 17 (1956). See also *Ruane v. New York State Racing and Wagering Bd.*, 400 F.Supp. 819 (S.D.N.Y.1975), *aff'd*, 532 F.2d 860 (2d Cir. 1976).

■■■ After the return of the verdict in the present case, defendants indicated that they would file a Motion for a New Trial. In response to plaintiff's inquiry, the court indicated that judgment would not be entered until after a ruling on the defendants' post-trial motion. The court acted within its power when it informed the parties that judgment would be entered at a later date. Although the court's statement to counsel did not constitute a direct order to the clerk to forbear entering judgment, the clerk should have been put on notice that immediate entry of judgment was not intended.

We do not believe that plaintiff is correct in asserting that the lower court either mandated or reaffirmed the clerk's conduct when it signed an order granting defendants leave to file a post-trial motion or when the post-trial motion was denied. On the contrary, the fact that neither the district judge nor counsel for either side was aware on March 25, 1976, that the clerk had entered judgment on December 12, 1975, indicates that the clerk acted contrary both to the intent of the trial judge and the understanding of both counsel.

For the foregoing reasons we believe that the clerk acted beyond the scope of authority under Rule 58. Accordingly, the December 12, 1975, judgment is void and defendants, therefore, filed a timely notice of appeal from the judgment entered on March 25, 1976.

## 2. Collateral Estoppel

Plaintiff seeks to recover for injuries suffered in a collision involving three tractor-trailers. At the time of the collision, one tractor-trailer, owned by Fred Olson Motor Service, was operated by plaintiff. Another tractor-trailer was driven by William D. Paulson, an employee of Stover Brothers Trucking Company. Container Corporation was the owner of the third tractor-trailer which at the time of the collision was driven by Daniel Gutkowski.

On May 14, 1975, plaintiff filed a Motion for Summary Judgment on the question of defendants' negligence. Plaintiff asserted that defendants had enjoyed a full opportunity to litigate the question of their negligence in a prior suit filed in the Circuit Court of Cook County by Isabel Gutkowski, Administrator of the Estate of Daniel Gutkowski.

The complaint in the Gutkowski suit sought recovery from Stover Brothers Trucking Company and William D. Paulson for the death of Daniel Gutkowski. The

complaint alleged that Daniel Gutkowski's death was a direct result of Stover Brothers' and Paulson's negligence in the operation of the tractor-trailer.

The district judge granted plaintiff's motion and held that collateral estoppel barred relitigation of defendants' negligence. The court stated:

> These Defendants had a full and fair opportunity to litigate this precise negligence claim in the Cook County Circuit Court action of *Gutkowski v. Stover Bros. Trucking Co.*, 72 L. 4987. After three days of trial in that case, a jury found these Defendants guilty of negligence in the May 14, 1972 vehicular accident which underlies this lawsuit. Any trial errors in that determination must be reviewed by the Illinois appellate court system and not by a federal trial judge. Collateral estoppel bars the relitigation of the negligence issue in this case.

The lower court denied defendants' petition to reconsider this ruling. Thereafter, the matter proceeded to trial on the issue of plaintiff's contributory negligence and damages. The jury returned a verdict awarding plaintiff $200,000.

Defendants assert that the trial court erred in determining that collateral estoppel barred litigation of the issue of their negligence. Defendants first point out that Paulson was prevented from testifying in the prior state court suit because of the invocation on behalf of decedent Daniel Gutkowski of the Illinois Dead Man Act.[3] Although not taking issue with the elimination of the mutuality requirement for application of collateral estoppel, defendants assert that because of the application of the Dead Man Act in the state proceeding, the circumstances:

> . . . clearly show that there is a "compelling reason" here for retaining mutuality or identity of parties, since under the peculiar circumstances herein a fundamental and unique difference in the evidence which could be admitted is

---

3. The parties indicated in their briefs that the Illinois Dead Man Act, Ill.Rev.Stat., Ch. 51, Sec. 2, was applied in the state proceeding as it appeared prior to the 1973 amendment. The statute provided:

No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any habitual drunkard, or person who is mentally ill or mentally deficient, or as the executor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending, and also except in the following cases, namely:

First—In any such action, suit or proceeding, a party or interested person may testify to facts occurring after the death of such deceased person, or after the ward, heir, legatee or devisee shall have attained his or her majority.

Second—When, in such action, suit or proceeding, any agent of any deceased person shall, in behalf of any person or persons suing or being sued, in either of the capacities above named, testify to any conversation or transaction between such agent and the opposite party or party in interest, such opposite party or party in interest may testify concerning the same conversation or transaction.

Third—Where, in any such action, suit or proceeding, any such party suing or defending, as aforesaid, or any persons having a direct interest in the event of such action, suit or proceeding, shall testify in behalf of such party so suing or defending, to any conversation or transaction with the opposite party or party in interest, then such opposite party or party in interest shall also be permitted to testify as to the same conversation or transaction.

Fourth—Where, in any such action, suit or proceeding, any witness, not a party to the record, or not a party in interest, or not an agent of such deceased person, shall, in behalf of any party to such action, suit or proceeding, testify to any conversation or admission by any adverse party or party in interest, occurring before the death and in the absence of such deceased person, such adverse party or party in interest may also testify as to the same admission or conversation.

Fifth—When, in any such action, suit or proceeding, the deposition of such deceased person shall be read in evidence at the trial, any adverse party or party in interest may testify as to all matters and things testified to in such deposition by such deceased person, and not excluded for irrelevancy or incompetency.

present *only because* of the difference in identity of the party plaintiffs.[4]

Defendants further contend the state court proceedings do not constitute a full and fair hearing because of the inability to present Paulson's testimony. Defendants also assert that collateral estoppel is not appropriate since the negligence issue decided in the state case was not identical to the negligence asserted in the present case.

Plaintiff argues that the negligence determination in the state suit is identical to the question of defendants' negligence in the present case. In addition, plaintiff asserts that collateral estoppel was appropriate since defendants received a full and fair opportunity to litigate the question of their negligence in the state action.

For the following reasons we believe that the application of collateral estoppel in the unique circumstances of this case was improper.[5]

■ Although plaintiff was not involved in the prior state court proceedings, plaintiff is not thereby prohibited from invoking collateral estoppel as a bar against relitigation of the issue of defendants' negligence. The parties agree that plaintiff is entitled to invoke collateral estoppel despite the lack

4. After the state court ruled that Paulson would not be permitted to testify due to the operation of the Dead Man Act, defendants submitted the following offer of proof:

OFFER OF PROOF

Mr. Carrier: Q Mr. Paulson, what time did you go to work on March 14th, 1972?

The Witness: About 7:00 o'clock.

Q And what kind of a rig were you driving?

A '72 International Tractor.

Q What kind of tank did it have on it?

A Two progress tanker.

Q What were you hauling?

A Fuel Oil No. 1.

Q Where did you pick your load up just before the accident?

A Lemont, Illinois.

Q Where were you going?

A Batavia.

Q Did you have an occasion to be traveling northbound on Route 59?

A Yes, I did.

Q And were you involved in an accident?

A Yes, I was.

Q About what time?

A Oh, approximately 1:15.

Q Was the accident on a two-lane or a four-lane road?

A Two-lane.

Q Were you approaching near the Tollway overpass?

A Yes, I was.

Q Did you see the Container Corporation vehicle coming south towards you at any time before the impact?

A Yes, I did.

Q When you first observed it, about how far was it from you?

A I'm not sure of the distance. He was up to—it was still four lane, up until it was still four lane.

Q Then, will you tell the Court what happened?

A As the road narrowed down to two-lane, it appeared that his left front tire went flat, left front corner of the truck dropped down as he came across the northbound lane. And he came across.

Q Did he strike your vehicle?

A Yes, he did.

Q What part of your vehicle did he hit?

A He started scraping my tank, approximately six foot back, which would be right above the fifth wheel. He scraped it all the way—bang: and split it and knocked the axial [sic] from under—

Q Was your vehicle in the northbound lane at the time of the impact?

A Yes, it was.

Q Was your vehicle ever in the southbound lane previous to the impact?

A No, it wasn't.

Q Where did your—what happened after the impact, as far as your vehicle is concerned?

A I got stopped as soon as possible when I looked in the mirror and saw that there had been a bad accident and my tank was ruptured, pulled the truck up farther in case of fire. I pulled the truck up farther, because I was carrying fuel oil, in case of fire.

Q Could you—as the Container Vehicle was coming towards you, could you see the driver of that vehicle?

A Yes.

Q Could you tell me any actions, at all, that he may have been taking?

A When he started coming across, he was fighting the wheel.

Mr. Carrier: Your Honor, that is the Offer of Proof.

The defense rests.

5. Because our disposition of this case is based upon other factors, it is sufficient to briefly note that defendants' argument concerning the non-identity of negligence issues is found to be unpersuasive. *Lynch v. Chicago Transit Authority*, 62 Ill.App.2d 220, 210 N.E.2d 792 (1st Dist. 1965).

of mutuality of privity,[6] *Garcy Corporation v. Home Insurance Company*, 496 F.2d 479 (7th Cir. 1974), *cert. denied*, 419 U.S. 843, 95 S.Ct. 75, 42 L.Ed.2d 71; *Federal Savings and Loan Ins. Corp. v. Hogan*, 476 F.2d 1182 (7th Cir. 1973); *Factor v. Pennington Press, Inc.*, 230 F.Supp. 906 (N.D.Ill.1963).

▆ Although the requirement of mutuality need not 'be met in this case, the doctrine of collateral estoppel will not be applied unless it appears that the party against whom the estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and that application of the doctrine will not result in an injustice under the particular circumstances of the case. *Rachal v. Hill*, 435 F.2d 59, 62 (5th Cir. 1970), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680; *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451 (5th Cir. 1971), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253; *Bruszewski v. United States*, 181 F.2d 419 (3rd Cir. 1950), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632; *Garcy Corporation*, 496 F.2d 479. A determination as to whether or not application of collateral estoppel is fair depends upon a case by case analysis. *Rachal*, 435 F.2d at 62–3; *Provident Tradesmens B. & T. Co. v. Lumbermens Mut. Cas. Co.*, 411 F.2d 88 (3rd Cir. 1969). The need is not for symmetry in the law. On the contrary, achievement of substantial justice depends rather upon recognition of the practical realities which surround the parties. *Provident Tradesmens*, 411 F.2d at 93; *Bruszewski*, 181 F.2d at 421.

▆ Defendants were unable to introduce Paulson's testimony in the state proceeding because of the Dead Man Act. A policy underlying the Dead Man Act is that disqualification of a witness is necessary to place the parties in a position of equality in order to effect a full and fair trial. *Combs v. Younge*, 281 Ill.App. 339 (2d Dist. 1935); *Schuppenhauer v. Peoples Gas Light & Coke Co.*, 30 Ill.App.3rd 607, 332 N.E.2d 583 (1st Dist. 1975). Thus, limitations imposed on defendants' right to fully litigate in the state court trial reflected a policy judgment by the state legislature as to how fairness might best be attained in litigation between a decedent's estate and a live adversary.

This court finds that it is unfair to allow plaintiff to benefit from the operation of the Dead Man Act through application of collateral estoppel. First, it is apparent that defendants were not permitted to fully litigate the question of their negligence in the state trial solely because Daniel Gutkowski was dead. In addition, if plaintiff in the case at bar had participated in the state trial, Paulson's testimony would have been admissible against plaintiff. See *Clark v. A. Bazzoni & Co., Inc.*, 7 Ill.App.2d 334, 338–9, 129 N.E.2d 435 (1st Dist. 1955); *Hudson v. Augustine's, Inc.*, 72 Ill.App.2d 225, 236, 218 N.E.2d 510 (2d Dist. 1966). This court believes that it would be unfair to allow plaintiff to assume a position better than that which he would have enjoyed had he participated in the state action solely because of the identity of the parties. Allowing plaintiff to invoke collateral estoppel would also subvert the policy of the Dead Man Act by permitting a live plaintiff to benefit from the operation of that Act and thereby obtain a footing superior to defendant. Under the circumstances of the case at bar, therefore, defendants should not be prevented from presenting evidence on the issue of their negligence.

In so holding, we do not forget the importance of preventing repetitive litigation. The doctrine of collateral estoppel should not, however, be used as a club to attain that goal but as a fine instrument that

---

**6.** The Court in *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 322 n. 8, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), referred to the following definition of mutuality which appeared in Restatement of Judgments § 93 (1942):

General Rule. Except as stated in §§ 94–111, a person who is not a party or privy to a party to an action in which a valid judgment other than a judgment in rem is rendered (a) cannot directly or collaterally attack the judgment, (b) is not bound by or entitled to claim the benefits of an adjudication upon any matter decided in the action.

protects "the litigant's right to a hearing as well as his adversary and the courts from repetitive litigation." *Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp.*, 421 F.2d 1313, 1316 (5th Cir. 1970), *cert. denied*, 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439.

### CONCLUSION

For the foregoing reasons the judgment for the plaintiff is hereby reversed and the case is remanded for new trial.

REVERSED AND REMANDED.