[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 19-14729

————————————

NATIONAL CASUALTY COMPANY,

Plaintiff-Counter Defendant-Appellant,

*versus*

GEORGIA SCHOOL BOARD ASSOCIATION-
RISK MANAGEMENT FUND,

Defendant-Counter Claimant-Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:16-cv-00691-LMM

————————————

Before ROSENBAUM, LUCK, and JULIE CARNES, Circuit Judges.

LUCK, Circuit Judge:

National Casualty Company and the Georgia School Board Association-Risk Management Fund disagreed about who bore the primary duty to insure Georgia educators whom they mutually insured. After the district court granted partial summary judgment in the Fund's favor, the parties prepared a stipulation as to damages, reserved their right to appeal, and asked the district court to enter final judgment. But the district court didn't enter final judgment. Instead, a deputy clerk entered a document titled "final judgment" for the Fund. After careful review and with the benefit of oral argument, we conclude that the document entered by the deputy clerk isn't a final decision. And because there's no final decision, we do not have appellate jurisdiction over National Casualty's appeal.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *The Negligence Suits Against Two Georgia Educators*

C.M. was a first grader at Cedar Ridge Elementary School in Grovetown, Georgia. On May 20, 2013, while C.M. was playing on the "horizonal loop ladder" in the school's playground, he fell and hit "his head on the hard packed surface and rocks below causing him to sustain an epidural hematoma." C.M. alleged that the "surface material of the playground on the premises of Cedar Ridge Elementary School was in an inadequate and unsafe condition

allowing rocks to protrude to the surface." C.M. also alleged that the "surface material" on the playground "was unsafe and of inadequate depth." C.M. sued Sarah Walls, the school's principal, for negligently "failing to keep and maintain" the playground "in a safe condition," "failing to remove rocks from the playground," and "failing [to] keep and maintain the adequate depth of the playground surfacing material to prevent children . . . from suffering serious injuries."

O.J. was a twelfth grader at Chapel Hill High School in Douglasville, Georgia. On October 3, 2013, O.J. and a teacher at her school, Ashley Mathieson, were conducting a chemistry experiment involving liquid methanol and an open flame. Ms. Mathieson had O.J. "hold a lighter with a flame over a crucible containing a solid substance, while" the teacher "poured liquid [m]ethanol into the crucible." While Ms. Mathieson was pouring the methanol "over the open flame, the liquid [m]ethanol gushed out of the container in an excess quantity and ignited the flame, causing a flash fire that engulfed" O.J. "in a ball of flames." O.J.'s "clothing, hands, arms, breasts, chest, neck, face, ears, back, and hair caught fire and she was tragically and catastrophically burned before the fire was extinguished." O.J. sued Ms. Mathieson for negligently failing "to adhere to and follow all available policies and procedures for chemistry experiments."

### The Coverage Dispute

Ms. Walls and Ms. Mathieson were insured by two entities: National Casualty and the Fund. National Casualty is an insurance

company that provides policies to the Professional Association of Georgia Educators. The Fund is an agency created by Georgia law so that boards of education can share liability risk. The Fund "is not an insurance company or an insurer." O.C.G.A. § 20-2-2004. Rather, its members share risk as set out in coverage agreements and are jointly and severally liable for the legal obligations arising under the agreements.

National Casualty and the Fund disagreed about which of them had to defend Ms. Walls in C.M.'s lawsuit and Ms. Mathieson in O.J.'s lawsuit and which of them had to pay any judgments that resulted from the lawsuits. So National Casualty sued the Fund, seeking a declaratory judgment that the Fund had "the primary duty to defend and indemnify" Ms. Walls and Ms. Mathieson. National Casualty alleged that its policy was "specifically excess if" Ms. Walls and Ms. Mathieson had "other insurance of any kind whatsoever, whether primary or excess," or if they were "entitled to defense or indemnification from any other source whatsoever," including state pools and programs of self-insurance. Ms. Walls and Ms. Mathieson, National Casualty alleged, were also insured by the Fund for C.M. and O.J.'s lawsuits.

The Fund filed three counterclaims against National Casualty. First, the Fund sought its own declaratory judgment that National Casualty was primarily responsible for defending and indemnifying Ms. Walls and Ms. Mathieson, and the Fund was only responsible for any excess liability once National Casualty reached its policy limits. The Fund was on the hook for only the excess, it

alleged, because its policy said that if Ms. Walls and Ms. Mathieson had "available" "valid and collectible insurance" for a covered loss, the Fund's obligations were "excess over the available and collectible insurance." Alternatively, the Fund sought a declaratory judgment that its "excess" insurance clause and National Casualty's "excess" insurance clause were "mutually repugnant because they both attempt to place their respective coverage excess over any other insurance." Once the excess insurance clauses canceled each other out, the Fund alleged that it was entitled to recover from National Casualty its "pro-rata" share of the costs to defend and indemnify Ms. Walls and Ms. Mathieson.

Second, the Fund counterclaimed against National Casualty for breach of contract and legal contribution to recover the amounts it paid to defend and indemnify Ms. Walls and Ms. Mathieson. National Casualty, the Fund alleged, was primarily liable for defending and indemnifying Ms. Walls and Ms. Mathieson, while the Fund had to provide only excess coverage. But, the Fund alleged, National Casualty "did not honor its insurance obligations" to Ms. Walls and Ms. Mathieson. So the Fund paid the costs to defend and indemnify Ms. Walls in C.M.'s lawsuit and Ms. Mathieson in O.J.'s lawsuit. In exchange, Ms. Walls and Ms. Mathieson assigned their defense and indemnification rights against National Casualty to the Fund, and the Fund subrogated their defense and indemnification claims against National Casualty. The Fund, based on its "legal contribution rights, in addition to the contractual rights received via assignment and subrogation,"

sought "to recover all defense and indemnification expenditures" it paid "due to" National Casualty's "failure to defend and indemnify its insureds." Alternatively, if the Fund's "excess" insurance clause and National Casualty's "excess" insurance clause were "mutually repugnant because they both attempt[ed] to place their respective coverage excess over any other insurance," the Fund sought to recover from National Casualty its "'pro-rata' share of all amounts incurred by" the Fund to defend and indemnify Ms. Walls and Ms. Mathieson.

Third, the Fund counterclaimed against National Casualty for unjust enrichment and equitable contribution for the amounts it paid to defend and indemnify Ms. Walls and Ms. Mathieson. National Casualty, the Fund alleged, had an obligation under its policy to defend and indemnify Ms. Walls and Ms. Mathieson "either entirely primarily or, in the alternative, shared pro-rata with" the Fund. But, because National Casualty refused to defend and indemnify them, the Fund picked up the tab to defend and indemnify Ms. Walls and Ms. Mathieson. National Casualty, the Fund alleged, was "unjustly enriched in the amount that" the Fund paid for Ms. Walls and Ms. Mathieson's defense and indemnification that National Casualty was obligated "to pay either entirely on a primary basis or, in the alternative, on shared pro-rata basis." The Fund, it said, was "equitably entitled to contribution from" National Casualty "for amounts that it has paid and continues to pay toward the defense" and indemnity of National Casualty's insureds.

*The Partial Summary Judgment Order*

National Casualty moved for summary judgment as to its claim for a declaratory judgment. National Casualty argued that any coverage of Ms. Walls and Ms. Mathieson under its policy was "excess to the coverage available to them" from the Fund "based on a straightforward reading" of the excess insurance clauses. Thus, it reasoned, it was entitled to a declaration that any coverage afforded to Ms. Walls and Ms. Mathieson under National Casualty's policy was "excess to that available to them under" the Fund's policy. In National Casualty's view, the Fund, "and not National Casualty, has the primary duty to defend and indemnify" Ms. Walls in C.M.'s lawsuit and Ms. Mathieson in O.J.'s lawsuit.

The Fund cross-moved for partial summary judgment on its declaratory judgment claim. The Fund argued that National Casualty was responsible for providing "primary coverage" for defending and indemnifying the educators, while the Fund was responsible for only "excess" liability over National Casualty's policy limits. The Fund alternatively argued that the parties' excess insurance clauses were "mutually repugnant because they both state[d] that they [were] excess the liability coverage provided by the other." Because the clauses could not be reconciled, the Fund argued, they canceled each other out and, under Georgia law, the policies "provide[d] coverage on a pro rata basis for defense costs and indemnity obligations to jointly covered persons."

The district court denied National Casualty's motion for summary judgment and granted the Fund's motion for partial

summary judgment. The district court rejected the Fund's argument that National Casualty had the duty to provide primary coverage because the Fund provided coverage entitling its members to defense or indemnification. But the district court concluded that the parties' conflicting coverage provisions couldn't be reconciled. So the district court applied a Georgia rule providing that where two insurance policies covering the same risk are irreconcilable, the insurers must share the liability. The district court concluded that the parties had to share defense and indemnity costs on a pro rata basis.

### The Certification to the Georgia Supreme Court

Both parties moved for reconsideration. The district court concluded that "the irreconcilable provisions rule"—the Georgia rule it relied on to grant partial summary judgment for the Fund—had been applied "only in cases involving conflicts between commercial insurance policy provisions." Because the Fund wasn't a commercial insurance company, the district court certified to the Supreme Court of Georgia the question of whether the irreconcilable provisions rule applied to "an entity entrusted with public funds."

The Supreme Court of Georgia answered the certified question and concluded that state law didn't require the Fund's money to be used "only in excess of any available commercial insurance." *Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n-Risk Mgmt. Fund*, 818 S.E.2d 250, 255 (Ga. 2018). "Insurance contracts are properly construed and applied as written unless prohibited by law or public policy,"

the court explained, and "no law or public policy" prohibited the application of the irreconcilable provisions rule simply because the Fund was a risk management fund created by statute rather than a commercial insurance company. *Id.* at 255–56.

In response, the district court denied the parties' motions for reconsideration. The Fund then amended its counterclaims to "set[] forth . . . outstanding matters in dispute," to relabel its "equitable contribution" claim as an "equitable subrogation" claim, and to add allegations about other mutually covered educators.

### The Deputy Clerk's Document Titled "Final Judgment"

The parties filed a joint status report and request for conference with the district court concerning the "correct structure" of a consent judgment. They told the district court that they agreed to resolve the claims not resolved by the partial summary judgment—the Fund's outstanding counterclaims—"by [s]tipulated [f]inal [j]udgment," and that they intended to preserve their rights to appeal the partial summary judgment order, which, they said, would "become[] a final judgment upon entry of the [s]tipulated [f]inal [j]udgment." The parties "agree[d] on the substantive content of the stipulations" but requested a conference to determine the "appropriate structure" for the stipulations.

The district court held a conference with the parties to discuss the proposed stipulations. The parties agreed to submit "stipulated facts . . . contain[ing] a withdrawal of [their] jury demand

and language about allowing the [district court] to proceed on the undisputed facts."

Following the conference, the parties filed a joint notice of stipulated facts and requested that the district court enter final judgment. They withdrew their jury trial demands, and the Fund stipulated to the dismissal of its attorney's fees counterclaim. The parties said that they had "reached a compromise agreement as to how defense costs and indemnity obligations" would be shared on a pro rata basis to comply with the district court's partial summary judgment order. They stipulated to the facts necessary to calculate damages—the amounts of the payments made by the Fund for actions related to mutually covered educators—and agreed that National Casualty's pro rata share of the expenses "to date" for these actions totaled $481,231.84. The parties reserved their rights to appeal the partial summary judgment order.

Although the parties asked the district court to enter final judgment, it did not do so. Rather, a deputy clerk, on behalf of the clerk of the court, entered a document titled "final judgment." The deputy clerk wrote that the Fund was "entitled to final judgment consistent with the parties' stipulations," which "include[d], but [was] not limited to, . . . $481,231.84" (National Casualty's total pro rata share as of the date of the stipulations). The deputy clerk directed the clerk of the court to close the case. There is no indication that the district court accepted the parties' stipulated facts or otherwise directed the deputy clerk to enter final judgment for the Fund.

National Casualty appealed the district court's grant of partial summary judgment for the Fund.  We directed the parties to address whether the deputy clerk had the authority "to enter judgment on behalf of the court," and whether the document titled "final judgment" entered by the deputy clerk "constituted a final judgment for purposes of appeal."

## DISCUSSION

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It follows from this principle of limited jurisdiction that a federal court has an independent obligation to review its authority to hear a case before it proceeds to the merits." *Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1400–01 (11th Cir. 2000). "[E]ven if the litigants do not question the court's jurisdiction, the court must inquire into its jurisdictional basis sua sponte." *Id.* at 1401 (emphasis omitted); *Reaves v. Sec'y, Fla. Dep't of Corr.*, 717 F.3d 886, 905 (11th Cir. 2013) ("Although neither party contests our jurisdiction, we are obligated to address jurisdictional questions sua sponte whenever jurisdiction may be lacking." (cleaned up)).

Here, the parties' arguments on appeal focus on the merits of the district court's partial summary judgment order, but we cannot review that order until we are satisfied that we have jurisdiction.  Having carefully reviewed the complex procedural history of this case, we conclude that we lack jurisdiction.  Here's why.

We "have jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. "[I]n evaluating whether a district court's order is final and appealable, we look to the substance of the order—not the label." *Young v. Prudential Ins. Co. of Am.*, 671 F.3d 1213, 1215 (11th Cir. 2012). A final judgment is a judgment that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000) (quoting *Pitney Bowes, Inc. v. Mestre,* 701 F.2d 1365, 1368 (11th Cir. 1983)).

Two requirements of the final judgment rule are at issue here. First, there are no magic words necessary to make a judgment final, but "a final judgment for money must, at least, determine, or specify the means for determining, the amount." *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 233 (1958). Second, an "order that disposes of fewer than all the claims of all the parties is not final and appealable unless the district court certifies the order for immediate review under" rule 54. *Freyre v. Chronister*, 910 F.3d 1371, 1377 (11th Cir. 2018); Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action

as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

Here, the district court's partial summary judgment order did not comply with these two requirements. First, the order disposed of National Casualty's declaratory judgment claim and found for the Fund on its declaratory judgment counterclaim, but the order wasn't final because it did not "determine, or specify the means for determining, the amount" of damages to which the Fund was entitled. *See F. & M. Schaefer*, 356 U.S. at 233. Second, the partial summary judgment order did not address the Fund's remaining counterclaims and therefore "dispose[d] of fewer than all the claims of all the parties." *See Freyre*, 910 F.3d at 1377. Because the partial summary judgment order did not resolve the damages on the declaratory judgment counterclaim and did not address the Fund's remaining counterclaims, more remained for the district court to do before it could "execute the judgment." *See CSX Transp.*, 235 F.3d at 1327. Thus, the partial summary judgment order wasn't a "final decision" under section 1291.

The parties told the district court in a joint status report that the partial summary judgment order wasn't final. They said that the partial summary judgment order would become final once the district court entered a stipulated final judgment. And National Casualty concedes on appeal that the district court's partial summary judgment order "was not final or immediately appealable in its own right."

Rather than rely on the partial summary judgment order as the final judgment necessary for appellate jurisdiction, the parties rely on the document titled "final judgment" entered by the deputy clerk. The Fund argues that, after the district court granted partial summary judgment, the parties stipulated to "the amount of [the Fund's] damages" while preserving National Casualty's right "to seek appeal of the [d]istrict [c]ourt's" summary judgment order. This stipulation, the Fund maintains, "allowed the [d]istrict [c]ourt to enter a [f]inal [j]udgment against National Casualty." National Casualty likewise argues that the document entered by the deputy clerk "disposed of all claims as between all parties" and made the district court's partial summary judgment order "final as a matter of law."

We conclude that the "final judgment" document entered by the deputy clerk was not a final decision for purposes of section 1291 because it wasn't entered with the approval or at the direction of the district court. "Courts render judgments; clerks only enter them on court records." *Pure Oil Co. v. Boyne*, 370 F.2d 121, 123 (5th Cir. 1966) (quoting *Burke v. Comm'r*, 301 F.2d 903, 903 (1st Cir. 1962)). The clerk can enter a judgment without the district court's approval or direction in only three scenarios. *See* Fed. R. Civ. P. 58(b)(1). The clerk "must" enter judgment "without awaiting the court's direction" when: "(A) the jury returns a general verdict; (B) the court awards only costs or a sum certain; or (C) the court denies all relief." *Id.* Otherwise, the district court must approve the judgment for it to be entered. *See* Fed. R. Civ. P.

58(b)(2)(B) ("[T]he court must promptly approve the form of the judgment . . . when . . . the court grants other relief not described in this subdivision (b)."). None of these three scenarios apply here.

Neither party argues that Rule 58(b)(1)'s first and third scenarios apply here. That's because they don't apply. As to the first scenario, there was no jury trial and therefore no general verdict. *See* Fed. R. Civ. P. 58(b)(1)(A). As to the third scenario, the district court didn't deny all relief. It instead found for the Fund on the declaratory judgment counterclaim and granted partial relief. *See* Fed. R. Civ. P. 58(b)(1)(C). That leaves Rule 58(b)(1)'s second scenario—whether the "court award[ed] only costs or a sum certain." Fed. R. Civ. P. 58(b)(1)(B).

National Casualty argues that the deputy clerk's "final judgment" document was "a ministerial act" authorized by Rule 58(b)(1)(B) because the district court's partial summary judgment order requiring the parties to "share defense and indemnity coverage on a pro rata basis" was, alongside the parties' stipulations as to damages, a "judgment for a sum certain." We disagree for three reasons.

First, the district court did not accept or ratify the parties' stipulations as to damages. In the absence of an order accepting the stipulated damages, it cannot be said that the "court" awarded the Fund a "sum certain," as required by Rule 58(b)(1)(B).

Second, the "final judgment" document entered by the deputy clerk—who was not "the court" for purposes of Rule 58(b)(1)—

did not award a sum certain.  Rather, the deputy clerk ordered "final judgment consistent with the parties' stipulations . . . that include[d], *but [was] not limited to*, an award in the amount of $481,231.84."  The "not limited to" language establishes that the judgment amount was not "fixed, settled, or exact"; thus, it was not a "sum certain."  *See Sum Certain*, Black's Law Dictionary (11th ed. 2019).

And third, the final judgment entered by the clerk didn't direct that a particular pro rata formula be used to calculate the on-going costs.  It therefore failed to satisfy the minimum requirement of a final judgment for money—"determin[ing], or specify[ing] the means for determining, the amount."  *See F. & M. Schaefer*, 356 U.S. at 233.

In sum, none of Rule 58(b)(1)'s three scenarios apply here.  Because the deputy clerk lacked the authority to enter judgment under Rule 58(b)(1), and because the district court did not give the clerk approval or direction to enter judgment, there is no final decision for purposes of section 1291.  *See Diaz-Reyes v. Fuentes-Ortiz*, 471 F.3d 299, 301 (1st Cir. 2006) ("[T]he clerk's entry of judgment . . . is without effect.  Accordingly, there is no judgment under [rule] 54(a), and we lack jurisdiction under 28 U.S.C. [section] 1291." (citation omitted)); *see also Butler v. Stover Bros. Trucking Co.*, 546 F.2d 544, 548 (7th Cir. 1977) ("If the clerk fails to stay within authority given him by statute, entry of judgment by the clerk is void.").  Without a final decision, we have no jurisdiction. The appeal must be dismissed.

## CONCLUSION

We end with a suggestion about how the parties on remand can resolve the absence of a final decision.  Given the procedural history of this case and the parties' jury trial waiver, Federal Rule of Civil Procedure 52 could yield a valid final judgment.  Rule 52 provides that in an action tried without a jury, the district court "must find the facts specially and state its conclusions of law separately."  Fed. R. Civ. P. 52(a)(1).  These findings and conclusions "may appear in an opinion or a memorandum of decision filed by the court," while "[j]udgment must be entered under Rule 58."  *Id.*

Here, to achieve the result the parties sought to achieve—creating a final judgment while preserving the right to appeal—the district court could issue an order adopting the parties' stipulated facts as its findings, provide its conclusions of law, and direct the clerk to enter a final judgment under Rule 58(b)(2) for the Fund.  *See id.*  This procedure, rather than relying on a document entered by a deputy clerk without the district court's approval, would satisfy the final judgment rule.

DISMISSED.